## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## WESTERN DIVISION

CORNER POST, INC.,

              Plaintiff,

v.

BOARD OF GOVERNORS OF THE FED-
ERAL RESERVE SYSTEM,

              Defendant.

Case No. 1:21-cv-95-DMT-CRH

## REPLY OF PROPOSED INTERVENORS THE BANK POLICY INSTITUTE AND THE CLEARING HOUSE ASSOCIATION L.L.C. IN SUPPORT OF THEIR MOTION TO INTERVENE

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.      Proposed Intervenors' Interests Are Not Adequately Represented By The Board.............2

II.     Proposed Intervenors' Motion Is Timely ...........................................................................4

III.    Proposed Intervenors Also Meet The Permissive Intervention Requirements ...................7

CONCLUSION............................................................................................................................7

CERTIFICATE OF SERVICE ....................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ACLU Minnesota v. Tarek Ibn Ziyad Academy*, 643 F.3d 1088 (8th Cir. 2011) ...........................5

*California v. United States Enviornmental Protection Agency*, 360 F. Supp. 3d 984 (N.D. Cal. 2018)........................................................................................................7

*Chase v. Andeavor Logistics, L.P.*, 686 F. Supp. 3d 854 (D.N.D. 2023) ........................................4

*Corner Post Inc. v. Board of Governors of the Federal Reserve System*, 144 S. Ct. 2440 (2024)........................................................................................................6

*Curry v. Regents of the University of Minnesota,* 167 F.3d 420 (8th Cir. 1999) ..........................3

*Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069 (8th Cir. 2023) .................................................2

*In re Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation*, 2019 WL 5698234 (S.D. Cal. Nov. 4, 2019) .....................................................5

*Minnesota Milk Producers Ass'n v. Glickman*, 153 F.3d 632 (8th Cir. 1998) ................................5

*NACS v. Board of Governors of Federal Resreve System*, 746 F.3d 474 (D.C. Cir. 2014) ...............................................................................................................................1

*National Parks Conservation Ass'n v. United States Environmental Protection Agency*, 759 F.3d 969 (8th Cir. 2014)..........................................................................2, 3, 4

*National PFAS Contamination Coalition v. United States Environmental Protection Agency*, 2023 WL 22078 (D.D.C. Jan. 3, 2023) ...............................................7

*North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918 (8th Cir. 2015)........................2, 4

*Reed v. Annett Holdings, Inc.*, 2006 WL 6907132 (S.D. W. Va. Apr. 20, 2006)............................5

*South Dakota v. United States Department of Interior*, 317 F.3d 783 (8th Cir. 2003) ...............................................................................................................................7

*Weltner v. Raffensperger*, 2020 WL 8116172 (N.D. Ga. June 26, 2020)........................................6

## STATUTES, RULES, AND REGULATIONS

Debit Card Interchange Fees and Routing, 76 Fed. Reg. 43,394 (July 20, 2011) ...........................3

Debit Card Interchange Fees and Routing, 88 Fed. Reg. 78,100 (Nov. 14, 2023) .........................6

Rule 24(a) of the Federal Rules of Civil Procedure........................................................................1

Rule 24(b) of the Federal Rules of Civil Procedure ........................................................................7

## INTRODUCTION

Proposed Intervenors seek to protect the unique interests of their members—financial institutions directly regulated by Regulation II—which would be harmed if Plaintiff's challenge were to succeed. Proposed Intervenors moved for intervention promptly after it became clear that this litigation would proceed to the merits of Plaintiff's challenge. Plaintiff does not dispute—and thus concedes—that Proposed Intervenors have standing to intervene and satisfy two of the four factors for intervention of right under Rule 24(a) of the Federal Rules of Civil Procedure. Specifically, Plaintiff does not dispute that Proposed Intervenors possess a clear interest in the subject matter of this litigation nor that Proposed Intervenors' interest could be impaired if Plaintiff's challenge succeeds. *See* Opp. 8.

Plaintiff thus disputes only two factors relevant to intervention of right. *First*, Plaintiff contends the Board will adequately represent Proposed Intervenors' interests. That argument fails for several reasons. To start, the Board makes no such contention, nor does it contest Proposed Intervenors' participation. Dkt. 47. Plaintiff also ignores precedent recognizing that government agencies tasked with considering broader public interests—as the Board is here—are not presumed to be adequate representatives of directly regulated parties. Plaintiff speculates the Board and Proposed Intervenors are aligned, but does so before the Board has even stated its position and without acknowledging Proposed Intervenor TCH's position in *NACS v. Bd. of Governors of Fed. Rsrv. Sys.*, 746 F.3d 474, 477 (D.C. Cir. 2014), Mot. 5 n.6—defending Regulation II on different grounds than the Board. And, while Proposed Intervenors and the Board are *currently* aligned on the *ultimate* outcome here, the Board's position could change. This possibility, precedent recognizes, demonstrates inadequacy of representation for purposes of intervention, lest parties like Proposed Intervenors never have their position heard on a rule that directly regulates them.

*Second*, Plaintiff wrongly argues that Proposed Intervenors' motion is untimely. Proposed

Intervenors seek to intervene to address the merits of Plaintiff's challenge, and accordingly filed this motion barely a month after it became clear the case would proceed to the merits. And, significantly, Proposed Intervenors filed this motion before—*well* before—any briefing on the merits has happened, with ample time for Proposed Intervenors to participate in the dispositive briefing without any impact on the existing schedule.

The Court should accordingly grant intervention of right. Alternatively, the Court should grant permissive intervention because Proposed Intervenors' participation, as representatives of institutions directly regulated by Regulation II, will offer an important, unique perspective on the significant issues before the Court without any prejudice to the parties.

## ARGUMENT

### I.    Proposed Intervenors' Interests Are Not Adequately Represented By The Board

Proposed Intervenors have demonstrated that their interests, and those of their members, will not be adequately represented by the Board. Plaintiff's arguments to the contrary lack merit.

To start, Plaintiff misstates (at 9) the standard for when the government is presumed to adequately represent an intervenor's interests. Questions of "'misfeasance or nonfeasance' by the government," "'adversity of interest' or 'collusion'" become relevant only if a proposed intervenor's interest is the same as the *public* interest represented by the government. Opp. 9. Eighth Circuit precedent is clear: "The *parens patriae* presumption of adequate representation is triggered only 'to the extent [the proposed intervenor's] interests coincide with the public interest.'" *National Parks Conservation Ass'n v. United States EPA*, 759 F.3d 969, 977 (8th Cir. 2014). Plaintiff's cases agree: "no presumption of adequate representation applies" in cases "[w]here the government would be 'shirking its duty' to advance the 'narrower interest' of a prospective intervenor 'at the expense of its representation of the general public interest.'" *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015); *see also Entergy*

*Ark., LLC v. Thomas*, 76 F.4th 1069, 1071-72 (8th Cir. 2023) (similar).

That is the case here. Proposed Intervenors' members have a direct "financial interest in ensuring that the Board's rule on permissible interchange fees allows recovery of issuers' costs plus a reasonable rate of return for debit card transactions." Mot. 13-14. The Board shares no such interest. *See* Debit Card Interchange Fees and Routing, 76 Fed. Reg. 43,394, 43,428-43,429, 43,434 (July 20, 2011) (excluding certain issuer costs and disagreeing that reasonable return required). More generally, the Board is "tasked with the much broader responsibility of executing" the Durbin Amendment's "goal[s]." *National Parks*, 759 F.3d at 977. And, regardless, there is no "assur[ance]" that the Board's position today "'will remain static or unaffected by unanticipated policy shifts.'" *Id.* Plaintiff ignores *both* the differences between Proposed Intervenors' and the Board's positions *and* the risk of the Board changing its position, each of which demonstrates inadequate representation under Eighth Circuit precedent.

Plaintiff's authority does not alter this conclusion. For example, *Curry v. Regents of the University of Minnesota* denied intervention by student organizations seeking to defend a university's collection of student fees, because any economic interest the student organizations had in the fee system was too indirect and speculative even to support Article III standing. *See* 167 F.3d 420, 422 (8th Cir. 1999). Moreover, the court's intervention analysis—dicta, given its finding on standing—found the student organizations' interest to be encompassed by the University's identical interest in the fee system, which operated entirely for student organizations' benefit. *Id.* Here, in contrast, standing is uncontested, this case involves a cap on fees paid *directly* to Proposed Intervenors' members, and however Regulation II might be characterized, it cannot be said to operate solely (or even principally) for the benefit of Proposed Intervenors' members.

Plaintiff's remaining cases in which courts denied intervention are even further afield and

involve far more comprehensive overlap between government and private interests.  In *Stenehjem*, for example, the suit "concern[ed] a claim to quiet title to alleged rights-of-way" (where the proposed intervenor and the government had identical positions) and not "administrative decisions about how the Grasslands should be managed or used" (where the proposed intervenor and the government disagreed).  787 F.3d at 922.  And in *Chase v. Andeavor Logistics, L.P.*, the United States "assert[ed] a trespass claim 'on the same federal common law bases'" as proposed intervenors.  686 F. Supp. 3d 854, 878 (D.N.D. 2023).  Neither case bears any similarity to the gap here between (a) Proposed Intervenor's specific interests and statutory arguments, and (b) the Board's consideration of broader interests, including those of merchants like Plaintiff, and different views of the statute.

One case, however, is directly on point:  *National Parks*.  As in that case, the Durbin Amendment tasks the Board with a "broader responsibility" and the Board would "'shirk its duty were it to advance the narrower interest'" of Proposed Intervenors in defending Regulation II.  759 F.3d at 977.  As the recipients of interchange fees critical to supporting the payments system Plaintiff and other merchants use, Proposed Intervenors' members have a specific, direct financial interest.  Moreover, as in *National Parks*, and as noted above, Proposed Intervenors and their members "cannot be assured that the [Board's] current position"—which, again, has yet to be stated—"'will remain static or unaffected by unanticipated policy shifts.'"  *Id.*  In short, Proposed Intervenors have undisputed interests in this litigation, experience unique financial impact, and have different views from the Board regarding interpretation of the statute.  The Board thus cannot adequately represent Proposed Intervenors' interests.

## II.     Proposed Intervenors' Motion Is Timely

Plaintiff is also incorrect about the timeliness of intervention.  Proposed Intervenors' interest is in the substantive (not procedural) merits of Plaintiff's challenge to Regulation II, and

they therefore timely moved to intervene *once* it became clear this case would proceed to consideration of the merits—well *before* any briefs have been filed.  Proposed Intervenors can easily participate in dispositive briefing on the current schedule, obviating any asserted risk of prejudice to Plaintiff.  (The Board, taking no position on this motion, asserts no prejudice.)

Plaintiff raises no persuasive arguments in response.  Its "first" and "third" arguments (at 14, 16-17) misleadingly recite the *overall* timeline of this case stripped of any context, including that the case involved *no* consideration of the substantive merits of Plaintiff's challenge for years.  Indeed, Plaintiff concedes (at 16) that the case thus far has been in its "initial stages," which focused on limitations issues unrelated to the substantive merits.  Plaintiff's invocation (at 14, 16) of the facts that "this suit was filed in April 2021" and included a "motion to dismiss" and an "appeal all the way to the Supreme Court" is thus an obvious strawman.

So too with the inapposite authority on which Plaintiff relies, which sheds no light on the timeliness of intervention here.  Many of Plaintiff's cases found lack of timeliness where significant discovery had already occurred and intervention would accordingly disrupt the cases— a problem with no application here.  *See ACLU Minn. v. Tarek Ibn Ziyad Acad.*, 643 F.3d 1088, 1094-95 (8th Cir. 2011) (intervention denied after parties "had already engaged in extensive motion practice, commenced written discovery, and begun taking depositions"); *In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, 2019 WL 5698234, at *2 (S.D. Cal. Nov. 4, 2019) (considering "accelerated [discovery] timeline" and history of multi-district litigation pending for almost 8 years); *Reed v. Annett Holdings, Inc.*, 2006 WL 6907132, at *7 (S.D. W. Va. Apr. 20, 2006) (considering prior extensions of discovery and need for additional discovery that would result from intervention).  Other cases Plaintiff cites are even less relevant, including one dealing with "post-judgment motions for intervention," *Minnesota Milk Producers Ass'n v.*

*Glickman*, 153 F.3d 632, 646 (8th Cir. 1998), and another based on the unique "time sensitivity" of an imminent election, *Weltner v. Raffensperger*, 2020 WL 8116172, at *7 (N.D. Ga. June 26, 2020). Plaintiff identifies no authority finding intervention untimely where, as here, no consideration of the merits has occurred, no discovery has occurred or is even anticipated, and Proposed Intervenors' participation would not disrupt the existing litigation timeline.

Plaintiff's argument that litigation on the merits was foreseeable in 2021 is both irrelevant and wrong. It is irrelevant because it would have served no purpose to intervene at a time when the issue before this Court was a procedural one on which Proposed Intervenors did not seek to advance any position. The argument is also wrong because litigation on the merits was not foreseeable. There was settled Eighth Circuit precedent on the limitations issue. Indeed, as Justice Jackson observed, in this case, the Eighth Circuit "follow[ed] the lead of every court of appeals that had ever addressed accrual of an APA facial challenge." *Corner Post Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2472 (2024) (Jackson., J., dissenting). Proposed Intervenors could not have foreseen, when this case was filed, that the case would reach the Supreme Court, much less anticipated a "reject[ion] [of] the consensus view" on the limitations issue if it did. *Id.*

Moreover, while Plaintiff's argument is irrelevant, it was entirely reasonable for Proposed Intervenors to suspect this litigation would be stayed in light of the Board's announced intention to revise Regulation II, a rulemaking currently pending before the Board. The Board had announced its intent to "update all three components of the interchange fee cap," introduce a "new methodology" for determining the base component, and "codify in Regulation II an approach for updating the three components … every other year going forward"—all significant changes. Debit Card Interchange Fees and Routing, 88 Fed. Reg. 78,100, 78,101 (Nov. 14, 2023). Agencies routinely seek stays when pending rulemakings may result in significant changes to regulations

challenged in litigation.  *See, e.g.*, *California v. EPA*, 360 F. Supp. 3d 984, 993 (N.D. Cal. 2018); *National PFAS Contamination Coal. v. United States EPA*, 2023 WL 22078, at *1 (D.D.C. Jan. 3, 2023).  And whatever Plaintiff asserts should have been expected, Proposed Intervenors moved diligently to intervene once it became clear this case would proceed to consideration of the merits.

Finally, Plaintiff fails to demonstrate it would suffer any prejudice from intervention. Plaintiff concedes its challenge is purely legal, Opp. 13, obviating the need for any discovery or even a formal administrative record.  There is accordingly a timeline for dispositive motions that Proposed Intervenors can readily meet.  Plaintiff's claim of prejudice is thus limited to claiming that "'[a]dditional filings' have the tendency to 'prejudice' existing parties 'by complicating and protracting the litigation,'" Opp. 17, without anything to suggest that "tendency" will occur here.

## III. Proposed Intervenors Also Meet The Permissive Intervention Requirements

Alternatively, and for similar reasons, the Court should permit intervention under Rule 24(b).  The motion is timely, the Board does not adequately represent Proposed Intervenors' interests, and Plaintiff will not be prejudiced by intervention.  And even if the Court disagrees about the Board's inadequacy, that factor is "a minor variable" in the permissive intervention inquiry.  *South Dakota v. United States DOI*, 317 F.3d 783, 787 (8th Cir. 2003).  Plaintiff's only independent argument against permissive intervention (at 17) is that Plaintiff would need "to respond to not just the Board's arguments but also [Proposed Intervenors']"—an implicit admission that Proposed Intervenors' interests and position differ from the Board's.  That is not the sort of "expense and inconvenience" that should preclude permissive intervention, particularly by organizations representing a significant number of entities directly regulated by the regulation at issue.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to intervene.

Dated:   November 6, 2024

Respectfully submitted,

By:*/s/  Noah A. Levine*_____

**WILMER CUTLER PICKERING HALE
AND DORR LLP**
Seth P. Waxman
seth.waxman@wilmerhale.com
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Tel: (202) 663-6000
Fax: (202) 663-6363

Noah A. Levine
noah.levine@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

**SULLIVAN & CROMWELL LLP**
Jeffrey B. Wall (*application for admission pending*)
Judson O. Littleton (*application for admission pending*)
wallj@sullcrom.com
littletonj@sullcrom.com
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Tel: (202) 956-7500
Fax: (202) 293-6330

*Attorneys for Proposed Intervenors*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2024, I filed the foregoing memorandum of law using

the Court's CM/ECF system, which will send a notice of the filing to counsel for all parties.


/s/ *Noah A. Levine*
Noah A. Levine