IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Corner Post, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTION TO** |
| | ) | **INTERVENE** |
| vs. | ) | |
| | ) | |
| Board of Governors of the Federal Reserve System, | ) | |
| | ) | Case No. 1:21-cv-95 |
| | ) | |
| Defendant. | ) | |

Before the court is a Motion to Intervene filed by the Bank Policy Institute ("BPI") and the Clearing House Association, LLC ("TCH") (collectively the "Proposed Intervenors"). (Doc. No. 45). Also before the court Motion for Leave to File Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment filed by the Proposed Intervenors. (Doc. No. 56). BPI is a nonpartisan public policy, research, and advocacy group that represents the policy interests of the nation's leading banks. TCH is a banking association that represents the interests of its members by developing and promoting policies to support a safe, sound, and competitive banking system that serves customers, communities, and economic growth.. For the reasons discussed below, the Motion to Intervene (Doc. No. 50) is denied. The Motion for Leave to File Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment filed by the Proposed Intervenors (Doc. No. 56) is denied in part and granted in part.

**I.      BACKGROUND**

**A.      Interchange Fees**

This case concerns the regulation of interchange fees associated with electronic debit card transactions by the Board of Governors of the Federal Reserve System ("Board"). An interchange

1

fee is a transaction fee for the processing of electronic debit card transactions. When a consumer purchases goods or services with a debit card from a merchant, the merchant pays the interchange fee to the cardholder's bank. There are four key players in this process: (1) card networks like Visa and Mastercard ("Networks"); (2) the banks that issue the debit cards ("Issuers"); (3) merchants who accept debit card payments; and (4) the merchant's banks ("Acquirers"). The Networks provide the physical and digital framework for these transactions. Issuers provide debit cards to consumers. This allows consumers to transact over the Network. Depending on the Network, debit cards can run on the same line as credit cards, although some Networks have separate lines for debit cards and credit cards. Merchants pay the interchange fee, which has been passed through by the Acquirers. Networks set the fees. The fees are paid to the Issuers as compensation for their involvement in the debit transactions.

     **B.**    **The Durbin Amendment and Regulation II**

The Durbin Amendment was enacted as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, § 1075, 124 Stat. 1376, 2068-2074 (2010). It directed the Board to establish rules for assessing whether "any interchange fee . . . is reasonable and proportional to the cost incurred by the issuer with respect to the transaction." 15 U.S.C. § 1693*o*-2(a)(2).

In 2011, the Board issued a Final Rule, commonly known as "Regulation II." Regulation II "provides that an issuer may not receive or charge an interchange transaction fee in excess of the sum of a 21-cent base component and 5 basis points of the transaction's value (the ad valorem component)." 76 Fed. Reg. 43394-01, 43463.

### C. NACS v. Board of Governors of Federal Reserve System

Several merchants and merchant trade groups challenged Regulation II shortly after its publication. NACS v. Board of Governors of Federal Reserve System, 958 F.Supp.2d 85 (D.D.C. 2013) ("NACS"). They "assert[ed] that the Durbin Amendment limits the Board's consideration of allowable costs to the 'incremental cost' of 'authorization, clearance and settlement [ACS] of a particular electronic debit transaction,' and that, by including [any] other costs in the fee standard, the Board 'acted unreasonably and in excess of its statutory authority.'" Id. at 96. The district court agreed, holding that Regulation II violated the Durbin Amendment's plain language. Id.

The D.C. Circuit reversed the district court's finding. NACS v. Board of Governors of Federal Reserve System, 746, F.3d 474, 477 (D.C. Cir. 2014). "Applying traditional tools of statutory interpretation," it "held that the Board's rules generally rest on reasonable constructions of the statute." Id.

On Remand, the Board issued an Updated Rule providing further explanation regarding transaction-monitoring costs. 80 Fed. Reg. 48, 684 (Aug. 14, 2025).

### D. Instant Action

North Dakota Retail Association and North Dakota Petroleum Marketers Association initiated the above-captioned action in April 2021 against the Board on behalf of their members to facially challenge Regulation II as modified by the Updated Rule. They alleged that the debit-card transaction fees under Regulation II were arbitrary and capricious, contrary to the Administrative Procedures Act, and violated the Durbin Amendment. To establish standing, they identified Corner Post, Inc. ("Corner Post") as one of its members harmed by Regulation II. Corner Post was formally joined as a named in party in an amended complaint filed in July 2021.

In 2021, the Board moved to dismiss on statute of limitations grounds. (Doc. No. 17). The court granted the motion, and the Eighth Circuit affirmed. (Doc. No. 28); N.D. Retail Ass'n v. Bd. fo Governors of the Fed. Rsrv. Sys., 55 F.4th 634 (8th Cir. 2022).

On July 1, 2024, the Supreme Court reversed the judgment of Eighth Circuit that affirmed this court's dismissal of the amended complaint. See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys., 603 U.S. 799, 824 (2024). On August 21, 2024, the Eighth Circuit remanded the case back to this court consistent with the Supreme Court's decision. See N. Dakota Retail Ass'n v. Bd. of Governors of Fed. Rsrv. Sys., 113 F.4th 1027, 1028 (8th Cir. 2024).

On August 22, 2024, the court issued an order scheduling a status conference with parties on September 20, 2024. On September 19, 2024, the parties filed a motion in which they proposed a summary judgment briefing schedule. (Doc. No. 39). On September 20, 2024, the court held the status conference with the parties. Counsel for the Proposed Intervenors also joined and indicated that they would soon seek leave to participate in the litigation. Following the conference, the court issued an order adopting parties' briefing schedule.

On October 16, 2024, Proposed Intervenors filed a Motion to Intervene pursuant to Fed. R. Civ. P. 24.

Proposed Interevenors assert they have standing and may intervene as a matter of right as their members stand to suffer serious harm should Corner Post succeed in vacating Regulation II as a dramatic reduction in interchange fees would prevent their members from recovering a reasonable return on enabling debit card transactions, as required by the Durbin Amendment. Alternatively, they assert that they satisfy the requirements of permissive intervention.

Corner Post opposes Proposed Intervenor's motion, asserting that their motion is untimely

4

and that their interests are being adequately represented by the Board.  The Board takes no position on this matter.

On January 10, 2025, Proposed Intervenors filed a Motion for Leave to File Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment.  (Doc. No. 56).  To preserve their ability to participate in this case as intervenors without disrupting the Court's briefing schedule, they requested leave to file a cross-motion for summary judgment. Alternatively, if the court were to deny them leave to intervene, they request that the court consider their proposed motion an amicus brief filed in support of the Board, which would otherwise be due on January 17, 2025.

## II. DISCUSSION

### A. Standing

"[A] prospective intervenor must 'establish Article III standing'" by demonstrating injury in fact, causation, and redressability.  National Parks Conservation Ass'n v. U.S. EPA, 759 F.3d 969, 974 (8th Cir. 2014). "[A]n association has standing to bring suit on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" Kuehl v. Sellner, 887 F.3d 845, 851 (8th Cir. 2018).

Proposed Intervenors assert they have organizational standing to represent the interests of its members.  Neither Corner Post nor the Board challenge their assertion. Consequently, the court finds that the Proposed Intervenors have standing.

### B. Intervention as a Matter of Right

Proposed Intervenors aver that their members have legally protectable interests that satisfy the requirement for them to intervene as a matter of right. Corner Post asserts that the Board will adequately represent their interests.

Rule 24(a) of the Federal Rules of Civil Procedure provides that the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Eighth Circuit distills this rule into a three-part test, requiring the party seeking intervention to show not only that it was timely, but that: (1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties. S. Dakota ex rel Barnett v. U.S. Dep't of Interior, 317 F.3d 783, 785 (8th Cir. 2003) (citing Chiglo v. City of Preston, 104 F.3d 185, 187 (8th Cir. 1997)). Here, the only issues in question are the timeliness of the Proposed Intervenors motion and whether the Board can adequately protect the interests of the Proposed Intervenors.

#### 1. Timeliness

Federal Rule of Civil Procedure 24(a)(2) allows an interested party to intervene in a suit "[o]n a timely motion." Fed. R. Civ. P. 24(a)(2). "[T]imeliness of a motion to intervene is a threshold issue." United States v. Ritchie Special Credit Invs., Ltd., 620 F.3d 824, 832 (8th Cir. 2010). To determine whether a motion to intervene is timely, courts consider "(1) the extent the

6

litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." In re Wholesale Grocery Prod. Antitrust Litig., 849 F.3d 761, 766-67 (8th Cir. 2017) (internal quotations marks omitted); see e.g. Arrow v. Gambler's Supply, Inc., 55 F.3d 407, 409 (8th Cir.1995) (holding that even if intervention would not prejudice existing parties, the progress of the litigation and intervenors' knowledge of it permitted the district court to find motion untimely); Ark. Elec. Energy Consumers v. Middle S. Energy, Inc., 772 F.2d 401, 403 (8th Cir.1985) (affirming denial of motion to intervene on timeliness basis when the district court made no finding of prejudice but based decision on the other relevant factors).

Proposed Intervenors maintain that their motion is timely, asserting that this case has thus far been limited to threshold issues unrelated to their interests in this litigation and that consideration of the merits of Plaintiff's claim is just beginning. They acknowledge that they have been keenly aware of this litigation. However, they maintain that they had reason to doubt that this litigation would proceed to the merits. Specifically, they assert that until the Supreme Court issued its decision, there remained a significant possibility that this would be resolved on procedural grounds. They further assert that, following the Board's issuance of a Notice of Proposed Rulemaking to Update Regulation II November 13, 2023, they had reason to doubt this matter would proceed to the merits as opposed to be stayed pending the Board's issuance of a new rule.

In response, Corner Post first stresses that the Proposed Intervenors have been aware of the case since its inception in April 2021 but did not seek to intervene until October 2024, or after the court held its status conference and entered an order adopting the parties' briefing schedule. It goes

on to assert that this case has progressed substantially and that the Proposed Intervenors belated intervention is prejudicial to the existing parties by complicating and protracting the litigation. It is dismissive of the Proposed Intervenor's justification for waiting to file its motion, averring that they should have foreseen the likelihood of merits litigation and should not have drawn an unsupported inference about a stay when the Board had not previously sought one when this case was pending at the Supreme Court. The undersigned agrees.

The first two factors weigh against the Proposed Intevenors. Proposed Intervenors acknowledge that they were aware of this case very early on if not at its inception. Despite this awareness, they did not file their motion until October 2024, or approximately two months after the matter had been remanded, approximately two months after the court scheduled a status conference, approximately one month after the court held the status conference, and approximately one month after the court issued an order setting a briefing schedule. See Ark. Elec. Energy Consumers v. Middle S. Energy, Inc., 772 F.2d 401, 403 (1985) ( finding intervention motion untimely when it was filed 12 days after commencement of action).

Turning to the third factor, the court does not find Proposed Intervenors assertion, that they held their motion to intervene in abeyance in anticipation this matter would stayed, particularly persuasive. This does not explain the two-year delay from 2021 to 2023 before the Board issued the notice. It is also no basis to stay a case challenging agency rule whenever an agency proposes some change to that rule. Notably, the Board did not seek to stay the action in 2023 when it issued the Notice of Proposed Rulemaking to Update to Regulation II.

As for Proposed Intervenors' assertion that they did not intervene as they were banking on the case being resolved on statute of limitations grounds, it is not unreasonable. However, it does

not explain why they waited in excess of two months following remand to file their motion to intervene.

This case has progressed substantially, having been actively litigated for more than three years. The initial stages have long since passed. Though the parties agreed the Board would defer filing the answer and administrative record, the filing of summary judgment motions is underway.

### 2. Adequacy of the Board's Representation of Proposed Intervenors Interests

A putative intervenor under Rule 24(a) must show that none of the parties adequately represents its interests. "Although the burden of showing inadequate representation usually is minimal, when one of the parties is an arm or agency of the government, and the case concerns a matter of sovereign interest, the bar is raised, because in such cases the government is presumed to represent the interests of all its citizens." N. Dakota ex rel. Stenehjem v. United States, 787 F.3d 918, 921 (8th Cir. 2015) (internal quotation marks omitted). "The government represents the interests of a movant to the extent his interests coincide with the public interest." Id. (internal quotation marks omitted). "Where the government would be shirking its duty to advance the narrower interest of a prospective intervenor at the expense of its representation of the general public interest, then no presumption of adequate representation applies." Id.; see also Curry v. Regents of Univ. of Minnesota, 167 F.3d 420, 423 (8th Cir. 1999) ("This presumption may be rebutted by a strong showing of inadequate representation, as, for example, by showing that the interest of the would-be intervenor cannot be subsumed within the public interest represented by the government entity.").

The Proposed Intervenors contend that even if the presumption applies, they have rebutted it as they have interests separate and distinct from the public interest represented by the government.

9

Corner Post disagrees, asserting that the public interest encompasses the Proposed Intervenors' interests. For support, it relies on the holding in Curry, 167 F.3d 420, 423.

In Curry, students sued a university over its use of mandatory student fees to fund campus organizations engaging in ideological or political activities with which they disagreed. Id. at 421. Various student groups sought to intervene, alleging injury to their interests in free expression, viewpoint-neutral funding, and undiminished funding. Id. The issue of standing aside, the court opined that the student groups' "economic interest in upholding the current fee system simply [did] not rise to the level of a legally protectable interest necessary for mandatory intervention." Id. at 422. The court further opined that, while student groups' and university's motives were distinguishable, their interests were the same as they both wanted the current fee system upheld. Id. ("Although the Movants assert that the University does not share their speech and economic interests, the University's interest in defending the mandatory student fee system that has been created to support student organizations encompasses the Movants' asserted interests.").

The court finds Curry instructive. The court appreciates that the Proposed Intervenors have an interest in this litigation because their members seek to ensure that the Board's rules permit the recovery of their costs associated with debit card transactions. However, their aim is not so dissimilar to the Board's interest in defending Regulation II. The purpose of Regulation II is to set the maximum fee that banks are allowed to charge merchants for debit-card transactions. By defending Regulation II, the Board is ostensibly ensuring the banks' interest in ensuring the current maximum cap fees.

Accordingly, the court finds that the Proposed Intervenors have not met their "minimal burden" of showing that the Board will inadequately represent their interests.

The presumption that the Board will adequately represent the interests of the public has not been rebutted. The Federal Reserve Board is an agency of the United States, presumptively making it an adequate representative. It has to vigorously defended this case, including before the Eighth Circuit and the Supreme Court for more than three years. It is seeking to uphold the current system. It will continue to do so through cross-motions for summary judgment. The Proposed Intervenors characterize their interest as a concern that they will lose the ability to recover their costs. Its interest is the same as the Board's interest as it too wants the current system upheld..

### C.     Permissive Intervention

In the alternative, the Proposed Intervenors seek to join suit under permissive intervention. "The decision to grant or deny a motion for permissive intervention is wholly discretionary." S. Dakota ex rel Barnett v. U.S. Dep't of Interior, 317 F.3d 783, 787 (8th Cir. 2003) (citing Bush v. Viterna, 740 F.2d 350, 359 (5th Cir.1984) ("Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.")); 7C Wright, Miller & Kane, Federal Practice and Procedure § 1913, at 376–77 ("If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention.") (footnote omitted). The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights. Fed. R. Civ. P. 24(b)(3); Barnett, 317 F.3d at 787 (citing United States v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir.1994)); 7C Wright, Miller & Kane, Federal Practice and Procedure § 1913, at 379.

The court is disinclined to permit joinder in this instance. "While Rule 24 promotes judicial economy by facilitating, where constitutionally permissible, the participation of interested parties in others' lawsuits, the fact remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend." <u>Mausolf</u>, 85 F.3d at 1301. As discussed above, the Board's interests encompass those of the Proposed Intervenors. Allowing the Proposed Intervenors would only serve to further delay disposition of this matter, likely result in significant duplication and consumption of additional resources. As the Proposed Intervenors have pointed out, Corner Posts' challenge are strikingly similar to those asserted in NACS, where the Proposed Intervenors filed an amicus brief. The Proposed Intervenors can do so here as well.

### III. CONCLUSION

The Motion to Intervene (Doc. No. 45) is **DENIED**. The Motion for Leave to File Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 56) is **DENIED IN PART AND GRANTED IN PART**. Proposed Intervenors will not be permitted to file a dispostive motion or response in opposition dispositive motions filed by the parties. However, they shall be permitted to file an amicus brief. Their amicus brief is due by February 21, 2025.

**IT IS SO ORDERED.**

Dated this 13th day February, 2025.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court